IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROY E. MORRISON, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| vs. | ) 2:21-cv-657 |
| | ) **JURY DEMAND** |
| JHCC HOLDINGS, LLC, d/b/a | ) |
| JOE HUDSON'S COLLISION CENTER, | ) |
| Defendant. | |

## **COMPLAINT**

### **I. JURISDICTION**

1. This is a suit for employment discrimination instituted pursuant to the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §621 *et seq.*, and the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §12101 *et seq.* The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Roy E. Morrison ("Plaintiff") timely filed his charge of discrimination against defendant JHCC Holdings, LLC d/b/a Joe Hudson's Collision Center ("Defendant") with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this suit within 90 days after receipt of his right-to-sue letter.

## II. PARTIES

3. Plaintiff is a citizen of the United States over the age of nineteen and a resident of Yulee, Nassau County, Florida.

4. Defendant is a Delaware limited liability company with a principal place of business in Pike Road, Montgomery County, Alabama.

## III. VENUE

5. Venue is proper in the Middle District of Alabama pursuant to 28 U.S.C. §1391(b) (1) and (2) in that it is the judicial district in which Defendant resides and a substantial part of the events or omissions giving rise to the claims raised here occurred in this District.

## IV. FACTS

6. In or about March of 2020, Plaintiff became employed by Defendant.

7. Defendant is based in Montgomery County, Alabama.

8. Plaintiff was hired as the Area Manager of the Savannah, Georgia market.

9. That market consisted of five stores in Georgia and one in South Carolina.

10. Plaintiff's supervisor was Chris Faith.

11. Plaintiff has diabetes and did so when he was hired.

12. Further, at the time he was hired, Plaintiff had recently had bypass heart surgery.

13. In or about April of 2020, Plaintiff was concerned about exposure to the COVID-19 virus when visiting his stores due to his health conditions.

14. Plaintiff consulted his doctor, who advised him that, due to his pre-existing conditions and recent surgery, that I was a high-risk individual.

15. Plaintiff told Faith about his health conditions and his doctor's concerns about his exposure to the virus.

16. Plaintiff asked him if he could work from home until the COVID-19 situation stabilized, which Plaintiff had done as Area Manager for other companies in the past.

17. Faith agreed, and Plaintiff worked from his home in Florida for about two weeks.

18. Then, without notice or request, Faith called Plaintiff and told him that he was being "furloughed" until it was safe for him to return to working in the stores.

19. Faith said that Plaintiff was not being laid off and would still be employed but would not be paid during this time.

20. On or about July 13, 2020, Plaintiff received a "COBRA" letter stating that his employment had "ended" and advising of his right to continue medical insurance.

21. At that time, Plaintiff had not heard anything from Defendant about when his "furlough" would end.

22. Plaintiff called Faith and asked him about the COBRA letter.

23. Faith said he had no knowledge of Plaintiff's termination and told him to call Defendant's Human Resources Department.

24. During this conversation, Faith told Plaintiff that Cooper Gilstrap had been promoted to the Savannah Area Manager and was actively managing the area Plaintiff had been assigned.

25. Gilstrap had been the manager of one of the stores in Plaintiff's area.

26. Gilstrap was in his 20's or 30's.

27. After talking to Faith, Plaintiff called Defendant's Human Resources Department and spoke to Renae Watts, the Human Resources Manager.

28. Plaintiff told Watts about his health conditions, his asking Faith to work from home and why, his working from home briefly and then being "furloughed," and then his receiving the COBRA letter.

29. Plaintiff asked Watts about the COBRA letter, and she said she would look into it.

30. Watts called Plaintiff back and said that he had not been "furloughed" but that Defendant had agreed to give him personal leave.

31. Plaintiff told Watts that he had not asked Faith for any leave from work but had only asked that he be allowed to work from home, and that Faith never mentioned anything about "personal leave" but only stated that Plaintiff was being "furloughed."

32. Watts said that Defendant needed Plaintiff to work in the stores and asked him when he could return to doing that.

33. Watts and Plaintiff verbally agreed that Plaintiff return to work in the stores on August 12, 2020.

34. A few days later, Plaintiff received a letter from Watts stating that he had to return to work by August 3 or he would be considered to be unable to perform the essential functions of his job and would be terminated.

35. On the Friday before he was to return to work, Plaintiff called the corporate office to find out where he was supposed to go since Faith had told him that Gilstrap was managing his area.

36. Plaintiff spoke to Wendy Patrick, Defendant's Chief Administrative Officer.

37. Patrick told Plaintiff to go back to the Georgia stores he was originally assigned to.

38. Plaintiff asked her why he should go there if Gilstrap was managing that area.

39. Patrick said that Gilstrap was "young" and would be willing to relocate.

40. On or August 3, 2020, Plaintiff returned to work.

41. At this point, Plaintiff still had not finished his training because the trainers had been in quarantine due to COVID-19 and were unable to finish training him.

42. So, Plaintiff continued training in his Georgia stores.

43. Upon agreeing to come back to work, Watts stated that the only reasonable accommodations Defendant could offer for Plaintiff's disability was to provide a sanitary workplace and personal protection equipment that all employees and vendors would have to wear while in the stores.

44. When Plaintiff returned to work, he noticed multiple employees, vendors, and customers inside the stores not wearing masks or social distancing, including Gilstrap, and Plaintiff also saw no sanitizing being done in the stores.

45. Plaintiff notified Defendant about this but got no response.

46. On or about September 11, 2020, Faith called Plaintiff and told him that he was terminated.

47. The reason stated was that the job Plaintiff was hired for no longer existed.

48. This was false: Gilstrap was still managing the area Plaintiff had been assigned to.

49. Additionally, Defendant was then searching for an Area Manager for the Northern Florida market, which is where Plaintiff lives and did at the time.

50. Plaintiff was not given an opportunity to move to that position.

## V. CAUSES OF ACTION

### COUNT I

### FAILURE TO ACCOMMODATE - ADA

51. Paragraphs 1-50 above are incorporated by reference.

52. Defendant was an employer as that term is contemplated under the ADA during the events of this case.

53. Plaintiff's diabetes constitutes a physical impairment under the ADA and did so during his employ with Defendant.

54. Due to this impairment, Plaintiff was and is substantially limited with respect to the major life activities of his organs including his heart, blood vessels, nerves, eyes and kidneys, and the major bodily functions of his endocrine and cardiovascular systems.

55. Plaintiff's congestive heart condition constitutes a physical impairment under the ADA and did so during his employ with Defendant.

56. Due to this impairment, Plaintiff was substantially limited with respect to the major life activities of his organs including his heart and the major bodily function of his cardiovascular system.

57. Plaintiff is and was during the events of this case disabled under the ADA.

58. Plaintiff was and is a qualified individual able to perform the essential functions of his position.

59. Plaintiff's request that he work from home during the period in which he was not allowed to work due to being furloughed or placed on leave, whichever the case may be, constituted a request for a reasonable accommodation for Plaintiff's disabilities under the ADA.

60. Plaintiff would have been able to perform the essential functions of his job working from home during this period, as he had been the two prior weeks he was allowed to work from home.

61. Defendant violated Plaintiff's rights under the ADA by failing to provide that reasonable accommodation to Plaintiff.

62. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by providing lost back-pay and benefits, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

## TERMINATION - ADA

63. Paragraphs 1-50 and 52-58 above are incorporated by reference.

64. Defendant violated Plaintiff's rights under the ADA by terminating his employment (1) because of his disabilities (actual and/or perceived); (2) in retaliation

for his request for an accommodation for those disabilities in working from home; and/or (3) in retaliation for his request for an accommodation for those disabilities in being provided a safe workplace with respect to COVID-19 transmission after his return to working in the stores.

65. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing him into the position he would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing lost back-pay and benefits, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT III

## TERMINATION - ADEA

66. Paragraphs 1-50 above are incorporated by reference.

67. Defendant was an employer as that term is contemplated under the ADEA during the events of this case.

68. Defendant violated Plaintiff's rights under the ADEA by terminating his employment because of his age.

69. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and other benefits.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADEA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADEA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing him into the position he would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing lost back-pay and benefits, and ordering Defendant to pay liquidated damages;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

Respectfully submitted,

*/s/ Adam M. Porter*

Adam M. Porter
Attorney for Plaintiff
Adam M. Porter, LLC
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Phone: (205) 322-8999
Facsimile: (205) 402-4619
Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

*/s/ Adam M. Porter*

Attorney for Plaintiff

<u>Defendant's Address</u>:
JHCC Holdings, LLC
c/o Corporation Service Company, Inc., Registered Agent
641 South Lawrence St.
Montgomery, AL 36104